If it pleases the Court, good morning. My name is Hector Rojas, representing the Plaintiff in this matter, and by way of procedure, Co-Counsel Darryl Parker will be performing the rebuttal. This case deals with a Title VII claim by a defendant who was a residential services assistant at a nursing home, and the issue in appeal basically deals with U.S. section 42 U.S.C. 2000E 2M, which basically states, and is a mantra for this Court and courts across the land, that an unlawful practice is established when a party demonstrates that This statute, of course, overruled Price Waterhouse, removing the but-for consideration in the termination of racial discrimination. With regards to the wrongful discharge claim, under Washington law, the plaintiff needs to be engaged in a protected activity. In regards to this particular plaintiff, her complaints were made to management and to her supervisors regarding the treatment of residents. When we look at that and the proximity of her termination, that raises a question that we feel is appropriate for a trier of fact. And finally, we requested a continuance, and the reason we requested a continuance was because the plaintiff was ill with a brain tumor. We requested the Court initially for a continuance. The Court granted the continuance, and the defendant right away came up with summary judgment. And what's important is that we did not receive a response from the Court during this entire period of time. Kagan. That sort of puzzles me, because the discovery cutoff date was in October, long after the summary judgment motion was noted. So discovery obviously continued. There were a couple of depositions that were taken in August, and what you told the That's not a reason not to oppose a summary judgment or to request a supplement to the record, even with your own declaration describing what took place at the deposition. Whether or not that would have sufficed, at least, it would have shown that there is – it would have made some difference. So the time the summary judgment hearing and ruling comes about, the discovery cutoff is way past, and there's no indication of discovery that's made any difference. So it's hard for me to understand how the Court abused its discretion. Well, we – actually, we requested a continuance, a second continuance. Well, I understand you requested the continuance, but – During the discovery period, though. We were still in discovery. Yeah, but it didn't keep you from conducting discovery. I mean, dependency of the motion didn't have anything to do with the discovery cutoff period. I mean, us not knowing, you know, whether the Court would rule certainly, you know, dealt a lot – made a big difference in respect to our client who was injured in the medical court. Well, nice. I mean, you didn't go into the Court, which you could have done, and say, can I supplement the papers that were filed? Well, we could have done that, but we're also – what we also could have done and what we did, in fact, was rely on a prompt decision from the Court. Well, I know, but the point is you can up and under Rule 56, up until the time of the hearing, you can put on stuff. And the hearing wasn't for four months. So, you know, my problem is I don't understand what was the abusive discretion in January if – if the Court had ruled before the discovery cutoff date denying a continuance. Hey, I – no question. But it's way after the discovery cutoff date, months. So discovery was way over. Right. Discovery was way over, and we have a motion pending. Yes. During that period of time. Absolutely, which means you could put on anything you wanted to. Well, I mean, we – we opted to, number one, wait on the Court's decision, and we think that our reliance was reasonable. But in addition to that, another important factor was the fact that our – our client could not afford the cost of transcribing, of purchasing those transcripts. And she was ill as well, so. One question is, is there any provision in Rule 56 that would have given you authority to, having asked the Court already for the – to continue the date of the summary judgment, which seems to me to include not only – to include not only extending it beyond the discovery date, but the authority to submit the material that you got from the discovery? Is there anything in Rule 56 that gave you the authority, as opposed to a sort of brazen lawyering to come forward and say, well, even though you're not answering us, here's some more material? To my knowledge, I don't – I'm not aware of any provision in Rule 56 that would give – that would have given us the authority to call counsel. Well, it's certainly been interpreted by this Court to permit affidavits as long as the day or day of the hearing. And it wasn't continuing the hearing anyway. Noting the deposition doesn't set – noting the summary judgment doesn't set a date, just as a time reference to get it on the Court's docket in the – in this district. Right. And I – I mean, that's certainly appropriate, and I understand exactly what you're saying. And, you know, we were faced with two choices. We could have gone with the more aggressive choice and request further and further continuances. We elected to, number one, be sensitive to the needs of our client. And, number two, wait for the Court's decision, which we felt would – we felt he would continue the case. In fact, Your Honors, he didn't. Well, he did it for four and a half months. I mean, there's nothing to continue. I mean, there's no date to continue. He sets that later. I'm not following what you just said. If he wants to hear argument, then at some point the district judge sets a date for oral argument.  And did, I think. Was this – this case was argued, right? Yes, that's correct. So he sets a date for hearing. At that point, doesn't a flag go off and say, wait a minute, if I want to – if I want to supplement and I want him to consider something else, I'd better – I'd better try to get it in front of him. Certainly, that's – This would have been like in January or late December. Certainly, looking – you know, looking at it from a Monday morning quarterback position, of course, that's exactly what we should have done and what we could have done. However, our reasonably relying on a court to issue a ruling regarding our request – Even after he sets a date for hearing? I mean – At that point, you've got to know that he's ready – he's ready to roll. But, Your Honors, you – Your Honors well know that courts sometimes delay rulings until the date of the hearing. So we, you know, we went to the hearing co-counsel, argued the case in front of the court, and again requested a continuance, at which time the court held the case in abeyance, requested further information, and never even addressed our motion for continuance. So I think the fact that they, you know, granted, you know, other options could have been done, but I think when you look into dynamics of the case, you know, we're dealing with a sick client, she's indigent, and we did file a motion before the end of the discovery for a continuance of the discovery date, I think that that was appropriate under the case. The second question I was going to ask was, didn't the district court, however, in the alternative decide that the submissions wouldn't have mattered? Didn't the district court decide in the alternative that the submissions would not have mattered? Yes. I believe the court mentioned that in its decision. Aside from this whole procedural discussion, why would they have mattered? And why was he wrong substantively? Well, you know, first of all, it's a matter of due process. I mean, you just don't put handcuffs on a plaintiff and then throw them off the boat to John and the water. It's just not number one. That's the first issue. He went specifically, as I recall, through the material that was submitted later and said it wouldn't have made any difference. So unless you can show us that it would have made a difference, then the whole procedural morass doesn't matter. So why specifically would it have mattered? Well, it would have mattered because, you know, we did conduct depositions and we did take declarations and speak to many individuals who were plaintiffs. I understand. I want to know specifically what would have changed the summary judgment factual situation if the material on the – as Judge Romer says, the discovery happened. So unlike a lot of these situations, we're not dealing with speculation. We know what you got. You know what you got. You submitted it to the district court. Why would that have been? Specifically, this deposition, that deposition, why would the result be different? Well, it would have, number one, cemented and confirmed and better supplemented the record with regards to the disparate treatment that plaintiff received. Okay. So which declaration? During the time of her appointment. That would be the declaration of the plaintiff. But, I mean, we're talking about other individuals and – Yes. The material that was not available in August that was available in October, what of that material would have mattered? Well, I do have my – I do have that information. I do have those names and I understand your question. And we have that and a co-counsel will attempt to supplement that with you, Your Honor. But certainly with regards to the case itself, the court concurred that plaintiff made out a prima facie case for discrimination. She's of, you know, protected class. She performed satisfactory. She, you know, suffered an adverse employment action and her employer treated her different than similarly situated employees that were not in a protected class. The primary issue, I believe, in this case and many others is problem number three, whether or not she suffered an adverse employment action. This court rules that, for the most part, when you present circumstantial evidence, it should be substantial and specific. In some instances, however, in Desert Palace, it mentioned that you can use circumstantial evidence. And with regards to the substantial and specific prong of the circumstantial evidence, we did not note in the judge's decision any reference or any recognition of the fact that we did present sufficient circumstantial evidence to survive summary judgment and create an issue, a question of fact, for the jury to consider. Now, you know, obviously when you look at various decisions, even more recent ones, Godwin and others, there are issues even with regards to the circumstantial evidence that the courts, that this court considers and acknowledges that basically that when you're presenting the circumstantial evidence, that it should be sufficient, but at the same time, if we have direct evidence, then it need not be raised to a great level. That doesn't necessarily apply in this case. This case is more of a mixed motives case whereby you have the employer stating that she performed poorly and that's why she was terminated. And our to our what we're arguing is that there is sufficient evidence to create a tribal issue, a question of fact, for the jury that she was treated differently because of her race. And that's in our brief. I mean, she was the only individual. So what you mean, what people mean by mixed motives is always a little mysterious. And I think what you mean is even if she performed poorly, people who performed the way she did but weren't African-American weren't fired. Is that what you mean? In other words, that it was both because of her performance and because she was African-American. Correct. And in these cases, I mean, every single case that I've tried, you know, you'll never meet an employer that says, well, you know, we fired her because she was black or because she was Latina. That doesn't, you know, they'll never say that. So obviously it's always on the plaintiff to try to overcome and prove that there is a issue of fact. The issue that some federal courts, lower federal courts, are having or struggling with is that they're making credibility issues in some cases. And there, you know, the employer states, well, she was performing poorly, as most of them do. And what happens is that, you know, when the plaintiff presents circumstantial evidence that is supported by declarations, affidavits and the record, that she was treated differently, then the court basically says, well, we believe the employer. We don't believe the employee. But what you're saying, I gather, is that she didn't have to just – she didn't really have to disprove – she didn't have to prove it was pretextual in the sense that she wasn't performing badly. What she had to prove was essentially a comparative thing. That's what she was trying to prove. She wasn't really putting a whole lot of emphasis on I didn't do what they said I did. Right. Instead, it was given what they said I did, they wouldn't have fired me if I wasn't black. So in that sense, pretext kind of isn't quite the point in the – at least in the sense of pretext of I didn't do this thing. Right. Right. And if you look at the questions that surrounded her leaving the job, you know, you have he said basically they said, she said they said, you know, she said that she was fired. And she had conversations with HR and with the director to that effect. The company initially indicated that she resigned but later admitted that she was terminated. As those kinds of issues and circumstances create at least an inference of bias along with the fact that, you know, every time money was missing somewhere, the first person they'd ask would be her. You know, any time someone had a problem with a resident, they complained to her. And I think that the court, when looking at the totality of the circumstances, can infer that there's something more to this case than simply, well, you know, we had a resident accuse her of wrongdoing. And especially if you note the point of that entire circumstance of her termination. For example, when she was terminated, which non-defendant admits, they never completed an investigation. Someone accused her of incorrectly yelling at them and all of this. However, they immediately suspended her. They sent her home. And they said that they would investigate the matter. Well, they didn't investigate the matter. They told her she could come back and pick up her things and terminated her. So those type of situations where an investigation really didn't occur. And then after that, the record suggests they did sort of investigate it. It was sort of odd because on the one hand, they were saying she resigned. On the other hand, they did make some inquiries. Yeah, that's a fact. I mean, an investigation is an investigation once you're on the street. That's as positive. I'd just stop talking at this point. Okay. Good morning. May it please the Court. My name is Steve Goldstein, representing Foss Home and Village. I'd like to start by addressing the Title VII claim. There really should be no dispute at this point what the standard is in addressing Title VII. So I didn't want to spend a lot of time on that, even though in the brief we're talking about it. Did the Court recently essentially walk away from Godwin and the notion of special strong circumstantial evidence for protection purposes? Yes. I believe that is true. There is reference to specific evidence to rebut when an employer comes forth with a reason for an employment action, you have to show pretext. And this Court has said you do need specific evidence to show pretext. And this Court's explained that what that means is in the context of Rule 56, not in the context of Title VII. Certainly circumstantial evidence is sufficient in a Title VII case to prove the case. No dispute. To that degree, the standard that the district court applied is wrong. The district court applied the correct standard. It applied Godwin. And Godwin said that the circumstantial evidence, as distinct from direct evidence, had to be particularly strong. So to that degree, he applied the wrong standard. Is that not right? Understandably so, but he did. I — when I reviewed the decision, I didn't think the Court said — the Court said that under either standard, the evidence does not establish pretext. And that's what the focus was. That's the way I read the decision, that whether it's just circumstantial evidence or whether it's direct evidence or strong evidence, pretext was not established. But whether the Court did or not in this case, Your Honor, since it's a de novo review, I don't think it matters, frankly. And what I'd like to do — No, I think that's true. I'm just trying to see whether — all right. Go ahead. What I'd like to do is address the evidence, because it was, frankly, misstated considerably in terms of what is in the record. First of all, we do not concede that there is no prima facie case. The fourth element of a prima facie case is somebody being treated differently for a similar situation. Not only do we have no evidence of that, we have exactly the opposite. There was only one other individual who was accused of the same type of conduct, verbal or mental abuse. And, granted, this person wasn't an employee because she was a private caregiver. These people can have private people come into the facility. One of the other residential service assistants, RSA's employees, reported hearing that she was yelling at the resident. And Nancy Moorman, the director, immediately went over there, told her to leave the premises, called the DSHS hotline to report verbal and mental abuse. And would not allow her back on the premises. This is an identical situation. The evidence is even stronger because she wasn't an employee, and yet they still took that action against this person because you cannot tolerate mental or verbal abuse. And I think that's something that can be difficult for us to appreciate is what the Washington legislature has done in the elder abuse statute. The legislature has gone quite far in protecting people in assisted living facilities and nursing homes. And, in fact, the statute treats mental and verbal abuse the same way as physical and sexual abuse in terms of the duties it imposes. If a mandatory reporter, such as Foss Home and Village, does not report mental or sexual abuse, they can be found guilty of a misdemeanor for not reporting it. What do you make of the original claim that she resigned? First of all, is that still the position of the government, of the court? Yes, we did. For purposes of summary judgment, we accept what the plaintiff said. We have to, that she was fired. We didn't concede that she was fired factually. Okay. What happened was she was told to leave. So the DSHS was called, as you have to do. She was told that she had to go, that she was suspended while they investigated. And what she said was, can I come by and pick up my things? Nancy Mormon took that as a resignation, good, bad, or indifferent, and still investigated. I don't think that shows, there's nothing there that shows that Race had anything to do with this. I mean, she conducted an investigation, and she conducts an investigation of any abuse claim. And she interviewed it, interviewed several of the residents and their family members, and they established the verbal abuse. Over whether she was fired or resigned, did Ms. Dressel at one point say, wait a minute, I didn't resign? And in other words, did that continue, that issue about whether she resigned or not? Apparently, it did. There's a question, there is a question of fact and dispute as to whether that continued, yes. All right. So what's, is there any significance of that? I don't think there's any significance to that. I mean, an investigation was done. The verbal abuse and mental abuse was established. Was the investigation done? Yeah. We submitted the investigation. There were some inquiries. Was there a final report ever made? Yes. The final report submitted in the, it is tab 13, pages 67 through 78. I see. Okay. And then it was, we supplemented that in the supplemental excerpt. And originally, the names were redacted to protect privacy. And for the purposes of this case, we then submitted the whole report. We submitted notes from the residences that she kept during the course of this when she was, one of the residents was yelled at to stay in the room. She asked for help and she was yelled at. And that was supported by two of the other residents. In a case like this, the plaintiff concedes that we've produced evidence showing that this was not, that there was a legitimate reason for the employment to action. So they have to come forward with some evidence of pretext and understanding that can be circumstantial evidence. But that requires one of two things, either that the explanation is unworthy of belief or that discrimination more likely motivated the employer. And the types of factual issues that plaintiff claims create a question of fact just don't have anything to do with these two issues that have to be proved in order at least have to come forward with some evidence to show that it's pretextual. Well, what about some of the evidence that's in dispute because of the 56F dispute?  There was at least one deposition, I think, where there was some support for her belief that other people were treated similarly, that there were investigators. Okay. I think I know what you're referring to, Your Honor. There's a couple of things there. First, the evidence that was in dispute that was later submitted that the Court, in fact, did consider anyway consisted of a couple of things. One was a couple of depositions of the coworkers. One of the coworkers said, you know, I don't remember if I was interviewed or not about the missing medication. The other one said, I don't think I was interviewed about the missing medication. We submitted the entire investigation about the missing medicine and the missing money. First of all, one of those occurred one year before the termination. One of those incidents occurred two years before the termination. And we've submitted the entire investigation. There were scores of people interviewed. Everybody who had access to those two cottages were interviewed. And, in fact, it was never resolved. Nobody was disciplined, including plaintiff. And what they did was change the medication procedures to make sure that medication wouldn't go missing. Nobody was disciplined for it, but scores of people were interviewed. The fact that one or two may or may not remember whether they were or were not, three years later, I don't think creates a question of that. What about the Giga deposition? I think what they're referring to there is that there's two separate, there's two, not entities. It's all one entity. There's an assisted facility with a plaintiff for it. There's a nursing home with dementia units where Mr. Giga was doing these investigations. Their allegation is, well, they spoke to those individuals before they fired them. These were some employees who were accused of striking a resident out of frustration, whatever. They all denied it. They were all fired anyway. You just can't take a chance in a nursing home when somebody is accused of something like that. An investigation took place. Mr. Giga investigated them, and they were fired. The claim here is, well, but they interviewed her before they terminated her. They never interviewed Ms. Trust, the plaintiff here. And the explanation for that is very simple. Nancy Mormons thought that she resigned. But in any event, it's immaterial. An interview doesn't change anything. We expect that she's going to deny it. You can't not take action in this. I have denied it. She might have explained it. I mean, this wasn't a question of striking anybody. No. This is a question of verbal and mental abuse. There's no explanation. You cannot yell at the residents. You cannot coerce the residents. You cannot tell residents to go get in their room. This is their home. They are not there to serve the RSA. The RSA is there to serve them. And under the elder abuse statute, there is no defense. You cannot yell at residents. You cannot coerce residents. You cannot intimidate residents. I mean, some of these people made statements such as, you know, when she spoke to me, I just cowered. Others said, when I asked for help in my room, she told me just she yelled at me to just stay in my room. These are not – there is no explanation. I mean, she can deny it. She can say, well, I had a bad day. She can say a number of different things. But you can't tolerate abuse at an assisted living facility. Ms. Gossie, can we switch gears to the Washington public policy statute? Yes. It's sort of unlike the Title VII claim, at least in my view. There is a considerable amount of evidence that trusts complain on a variety of issues over a couple of years. And she says it was – they were – the complaints were made with a shrug or rolled eyes or whatever, in any event, the real point being that she did complain, and that there's arguably a reasonable inference from the complaints that when they found an excuse to terminate her, took advantage of it and did, contrary to Washington public policy, which protects elders from neglect as well as abuse. So – Okay. There's three issues there, Your Honor. First of all, to establish a prima facie case, you have to prove three things, and that's the first. So I'll address that specifically. But even if you get that far, you still have to show causation, that that was the reason she was fired. And third, you have to show that the defendant is not able to offer an overriding justification for the dismissal, which is here with three families and the residents complaining about the verbal abuse. But turning our attention even to the first, the clear mandate of public policy, that those complaints were viewed as complaints that her coworkers weren't doing their jobs. So when she got the complaint, and we submitted Nancy Mormon's declaration on this, Nancy Mormon would investigate and make a determination. I'm not sure I understand, because if your coworkers aren't doing your job, it's the same thing as saying you're neglecting the patient. I mean, I'm not sure I get the point, because if they're – by definition, if they're not doing their job, there's patient neglect, or by definition, if there's neglect, the coworkers presumably weren't doing their job, so. Well, the reason that is not treated as neglect or abuse is because if that, in fact, is what Ms. Truss thought was going on, she had a statutory obligation to report it to DSHS. That 1-800 number is in every single cottage. Every single RSA is trained every single year, and we submitted in the materials the training materials that Ms. Truss took. Does that cover neglect as well as abuse? Yes. You have to report neglect and abuse, because neglect is one of the definitions of abuse. But does that excuse not reporting it to your employer? Does that excuse? What I'm trying to explain, at least in my view, is that what – that explains why the employer treated her reports as they did. There'd be meetings at the – It doesn't really. I mean, if she screwed up and didn't – and instead, if they thought that this wasn't – listened to her and believed her, then they should have said, you have to go call the department, or we will call the department. But it doesn't prove anything about what they thought she was reporting. I don't think so, Your Honor. If you look at the details of this, she claims that one of the residents wasn't cleaned. Well, sometimes residents soil themselves after the last person checked them. She claims that it was clear that it was there for quite a while at one point. There's – yeah, there's issues like that that I suppose are foundation questions, but they were investigated by Nancy Moorman, and she took action. You still have to prove that this is somehow this course of complaints. She was never disciplined for the complaints. Nothing ever happened against her about the complaints. So when she is accused by three different families of verbal abuse and she's immediately suspended and terminated, I don't see how that has any tie-in, according to the burden of proof under state law, to that action. You'd have to show some sort of evidence. Again, it's the same burden-shifting analysis in a discharge in violation of public policy case. If we come up with a reason for the discharge, then the plaintiff has the burden of showing that that's just pretext. Usually you can show that by something like, well, somebody else did the same thing and nothing happened. But these are meetings that these people have. They get together and say, okay, what are some of the problems? Well, so-and-so, this happened and this happened. And not every one of those constitutes abuse or neglect. If somebody thinks it's serious enough to constitute abuse and neglect, they have to report it. And that's statutorily protected. You cannot take any action against an employee for reporting suspected abuse. That's absolutely statutorily protected. She never reported any of this. If she doesn't report it, it's not statutorily protected. She didn't report it. That's the protected activity. Complaining to your employer is not the protected activity. The protected activity is complaining to the State. But, again, there has to be some evidence of pretext. And there just isn't any evidence of pretext in this case, that the reason that for the discharge here was pretextual. I mean, again, we only have one other example. The time lapse between the last report and her firing? I think there was one of the complaints, I forget which one, was about a month before. Some of the complaints were up to two and a half years before. You know, every time you have a staff meeting, there's going to be some complaints about something. The refrigerator wasn't clean. There's mold in the coffee machine. I don't think mold in a coffee machine constitutes abuse under the statute. But if you think it does, you better report it to DSHS. And if you do, you're protected. But I don't think just complaining about these things to your manager constitutes protected activity anyway. So are you making a legal argument or a factual argument? I'm making a legal argument. A legal argument, just a minute. Absolutely. I'm sorry, what? Absolutely a legal argument. That because she didn't report it, she wasn't protected by the public policy. Is that your argument? Yes, it is. It's not simply that because she didn't report it, that demonstrates that it wasn't really a complaint about abuse. I understood that you'd be saying the second, actually, and now I think you're asking for the first. I don't know which one you're on. I think probably both, Your Honor. But really, it's a legal issue. The public policy exception is just that. You have to, for termination violation of public policy, you have to have a statutorily protected activity. Filing a work comp claim, statute protects you. Reporting abuse, statute protects you. And there's a multitude of other issues that you're protected by, by statute. Reporting abuse to your employer is not protected, even if it's abuse. I don't believe so. But even if you conclude, Your Honor, that I'm wrong and it is still a reported abuse and it's still statutorily protected, then you still have to prove that the complaint was filed, and that it was, there's a causation element, that because she complained that the coffee filter had mold in it, she was fired. Frankly, I don't, you know, that part, whenever you deal in these situations, there is a certain amount of factual weighing, for the simple reason that the ultimate burden in summary judgment is, you know, if reasonable minds can't differ, then we win. So, I mean, certainly there's a certain amount of analysis there that may be considered factual. But I think it's both. I don't think there's enough factually to get by, and I don't think the legal standard is met. Unless there's some specific evidence about, I'm prepared to address all those factual issues, but if there's others that specifically concerned you, I'd be happy to address  Thank you. Mr. Roloff? Good morning, Your Honors. The issue of the continuance was a very, very sore point for me, because I practiced both in Washington and in California, and the initial motion for summary judgment was noted for August 27th. And we immediately realized that right after we had gotten the continuance, only a few weeks after we had gotten the continuance, and the allowance to continue to do discovery, this motion was before us. Given the financial circumstances of the plaintiff, we decided to go ahead and do as much discovery as we could, not knowing that the court could have decided the motion for summary judgment any day. The court did not say, I'm going to set a hearing, and the hearing is going to be in a few weeks. There was no hearing set whatsoever. So it's now August the 27th. We're into September, and so we try to do some discovery. During the time we were doing discovery, the court could have made a ruling on the summary judgment at any time. It wasn't until we were right on top of the hearing, past the Thanksgiving holidays, past the Christmas holidays, the court all of a sudden says, okay, now we're going to have a hearing. There just simply was not time to supplement the record, to get those transcripts processed. I'm sorry? I mean, you could have done it, but what you're really saying is you were entitled to wait, because you essentially had made the motion, and you were waiting for a ruling on it. We were waiting for a ruling, and we were left with the possibility that we would have spent all this money, and the court could have simply said, no, I'm not going to give you the continuance, or no, I'm not going to do it. But why does all this matter? He did eventually go on and review the documents that you wanted to submit and explain why it wouldn't have made a difference to him. And we can do the same thing, presumably. But that's not exactly true, Your Honor, because the Jefferson transcripts were not transcribed. What happened was, via declaration, the gist of some of the depositions were what was given to the court. We took the depositions of the four people who allegedly made these complaints. And the four people who allegedly made these complaints, their testimony differed dramatically from what's in the investigative report. That information was never put before the court. On the public policy claim ---- You're saying that there's other information that you didn't submit with your motion to reconsider in January that you could have submitted? We did not submit. Yes. We did not submit any of the information from any of the transcripts of the depositions of the individual people who allegedly made these complaints. And that we don't have either now. Right. That's not in the record anywhere at this point. It's not in the record. There just was not time to do that. Did you tell the district court that? I don't recall. In your motion to reconsider. I don't recall. I don't recall if I did or not. Okay. Thank you, Mr. Rojas, for your argument. Mr. Parker, we'll see. Thank you. The matter just argued will be submitted. And we'll take a brief recess before hearing argument in the last two matters on calendar.
judges: Alarcon, Rymer, Berzon